Case number 20-5318. Ryan Noah Shapiro, Appellant versus United States Department of Justice. Mr. Light for the Appellant. Mr. Tillman for the Appellant. Good morning and may it please the court. This is Jeffrey Light on behalf of Appellant Ryan Shapiro. This court has never squarely addressed the question of whether Rule 56D requires in every relief. However, in the FOIA case of Shaffer, there was no allegation by the plaintiff of bad faith, and yet this court held that it was an abusive discretion to deny Rule 56D relief. When this court has considered the existence of bad faith, it's been... What was the issue? What was the name of that case you just cited? Shaffer was decided in 1974. In when? Sorry. 1974. Well, the government cites far more recent cases like Freedom Watch and Baker and Hosteller, which are much more frequent cases, and they say evidence of bad faith is necessary in a FOIA case. That's what they hold. Well, those cases are actually distinguishable because in those cases, the plaintiff's sole argument was that there was bad faith. So this court said, was there or was there not bad faith? In this case, plaintiff is not pressing on appeal a bad faith argument, but is arguing that the declarations were insufficient and that additional information was needed in order to fully oppose it. So this is different than... Mr. Light, I'm looking at your picture. You're arguing in the district court, you argue that the district court should allow statements, and here I'm quoting you, give rise to the possibility of agency bad faith. That was your position in the district court. That was one of our positions in the district court. So how can you now say that the district court erred by requiring a showing of bad faith? That was your argument in the district court. Well, we pressed two bases for it. One was the issue of bad faith, and the additional one was insufficient declarations. In fact, we said very... I was only focusing on your bad faith point. You're telling us that the district court erred by requiring evidence of bad faith, but you argued in the district court that there was evidence of bad faith. We noted that there was, but we also said very specifically that evidence of bad faith was not required. And in our declaration in which I went into what was required, I set forth that there was bad faith, but additionally, there were other reasons why discovery was required. Could you... Would you go on? The time is limited. Would you focus... Tell us what your best argument is about the inadequacy of the search, would you please? Separate from the discovery issue? Yeah, separate from the discovery issue. Yeah. So in Campbell, this court made clear, as far as case law, in Campbell, this court made clear that a search of the CRS is not sufficient and that a separate search of the ELSER indices needed to be conducted. And in this case, as a factual matter, we never found out from the FBI whether the ERS or other systems were searched directly or not. And there's a big difference because there are different capabilities of the CRS search versus the ELSER search. And Mr. Hardy specifically said in his declaration, not all names of individuals contained in the indices of the CRS. So for the FBI to then only conduct a search of the general indices of the CRS is not proper in light of the statement made in the declaration. Can I just ask, with respect to the 56D argument, do you have any authority for the proposition that not providing search words, search terms, or keywords entitles a plaintiff in a FOIA case to a deposition or other discovery? So the standard under Convertino is, and what was dispositive to the court in this case, is whether the information was necessary. And this court, very specifically in Oglesby, said that keywords are necessary and used that specific wording. But the remedy for that is another declaration. You didn't want another declaration. You didn't ask for a better declaration. You asked for a deposition. So what authority do you have for you get a deposition? Well, we didn't ask for a deposition. We wouldn't have had any problem if the response had been a declaration addressing those questions, as opposed to a specific item-by-item response. But the general point is not that the court needed to give the specific relief that we asked for, but that it needed to grant us relief under 56D, which gives the court a menu of options. But the court didn't select from that menu. The court said no 56D relief is available at all if there is not a showing of bad faith. And that is not something that's been established by the text of the rule and is, in fact, inconsistent with the text of the rule. Because if plaintiff had evidence of bad faith, they would simply win on the merit, and there'd be no point in having discovery. The whole idea of Rule 56D is that the plaintiff cannot prevail on the current record. I just have a follow-up question to Judge Wilkins' question about key terms. So, with respect to your request that focuses on names and organizations, the Hardy declaration says that they searched using the name of the person or organization, a phonetic breakdown, dates of birth, places of birth, and Social Security. So, with respect to the names and organizations, could you help me about that? Where are the key terms? Where do they say they also use key terms for them? So, the keywords that were described there, the search terms that were described by Hardy were the search of the CRS. It is not clear if the ELSR indices were searched, what keywords were used for those. We don't even know which systems were searched, the ERS, the FBI policy had been that when they conduct searches of the ELSR indices directly, they would only search for the subject of the investigation, not mentions or overhears or any of the other things that the ELSR search program is capable of doing. I see I'm now into my rebuttal time. Okay, thank you. Good morning. I'll start by focusing on the issues that appear to be of importance to the court, that is the Rule 56D issue, unless there are other questions. Pertaining to that issue, I think the district court's decision has to be read in context. That is, the district court did say there was no showing of bad faith, therefore, plaintiff was, or Mr. Shapiro was unentitled to discovery is the exception, not the norm. That is, if the court has before it sufficient facts to enter summary judgment, it does not abuse its discretion by foregoing discovery and ensuring summary judgment. In this case, the court had before it sufficient facts to answer summary judgment on the ELSR search issue. Specifically, the second declaration of Mr. Hardy said that the subjects of the request were searched. ELSR search was done for the subjects of the request and attached as an Exhibit A, the subjects which identified the particular names of individuals or organizations. In the 16th Hardy Declaration, Mr. Hardy clarifies that there was a misunderstanding within the FBI in terms of the RID's office and the ELSR office. They did do, and the ELSR office did do, a search. It just turns out that the search was duplicative of what the FBI had already done. That is, that the ELSR indices had been incorporated into the automated case system, which is the general search that the FBI does, which allow the FBI, by using the search terms, to search the ELSR indices that determine whether there was any potentially responsive information, and if so, then go out and locate that information for purposes of processing. Mr. Tillman, could I ask you to step back, for example, just for a second, and help me understand all these different indices and systems. Let me work with an analogy and see if you think it works, okay? Yes. Let's assume what the FBI is operating here is a library, okay? Okay. It consists of three things. It consists of books, which are the actual case files. It consists of books, which are the actual case files. As I understand it, that's the ERS, EDA, CRS, and ECS systems. Those are files. Those are books. Those are the books in the library, right? Yes. Yes. Okay. Then they've got different kinds of catalogs, as I understand it. Just tell me if I have this wrong. I may. The card catalogs are the general indices and the ELSR indices. In those indices, you can look up books by title and author, right? That's what you use those for. Then there's this computer system, ACSUNI, which allows you to digitally search the card catalogs, right? Is that the way it works? Generally speaking, yes. With one caveat, that is that the ELSR indices are incorporated in the automated case system and Sentinel, which is the new generation search feature, which allows you to search the indices. Go ahead. Wait. Say that again, please. What's incorporated into what? The central record system is composed of ... It's just a record system for the FBI. Then you have the indices that are incorporated into these search functions. That is the automated ... Well, Sentinel came online on or about 2012. When that came online, the indices are searchable. The card catalogs, as you call them, are searchable in Sentinel. In Sentinel. An automated case system as well for older records. Yes. Is that ACSUNI? Is that what that is? Yes. ACS is the original automated version of the ... Now that's quite Sentinel. That's correct. However, I think ACS was still operational for a period of time. It might have been ACS at a particular point in time when the search was conducted because the declaration was signed in 2012. Right. Okay. Great. Because that's what's mentioned in the declaration. Yes. Yes. Okay. Given that, I just have two questions. The first one is, where were ERS and EDA? Those are two record-keeping systems that the plaintiff here says should have been searched. Where do they fit into this whole system, my library system? Where are they? Well, those ... In essence, that doesn't ... What are they? The ELSR indices are what allows you to ... No, no, not the ELSR. I was actually talking about ERS and EDA. What are they? I believe that those are actually systems that maintain records as opposed to the indexes of records, which the indices shows you where to go, to put it simply. No, I get that. But are these like books in my library? ERS and EDA, are they books? I believe so, but I would need to clarify. I believe they are, but- Okay. Yeah, okay. Well, let me ask you this then. Are there any records ... Would the records in those systems show up in an ACS UNI search? They would show up on the indices. They should show up on the indices. That is that if you recall- The ACS UNI, that would search my card catalog, correct? That's correct. In other words, they would show up in the card catalog, so they would do that. Is there anything in the declarations that would tell me that? Where would I look to have that? I realize there's a lot of declarations. If you want to tell us later that- Paragraph 115- Paragraph 115- I'm sorry, paragraph what? 115 of the 16th Sedille, I mean, Hardy Declaration. Okay. Got it. 115. Okay. Here's my second question. It has to do with these ELSER mentions that the plaintiff here has raised. The second Hardy Declaration says that they're not indexed in the headquarters ELSER index. Would the ACS UNI search have turned up ELSER mentions that might be listed in field office indices? Yes. Just to clarify, there was a misunderstanding in terms of what the ELSER office was doing when it was conducting the search. Initially, in the second declaration, it was believed that the FBI would do the ACS search, but then also send out a request for the ELSER office to do a separate search, which was done in this case. However, the 16th Hardy Declaration clarifies that, in essence, what was being done is just searching ACS. That is, the ELSER office was searching ACS because all of the indices, the ELSER indices, were uploaded into ACS. Okay. I got that, but what about the- Hardy says that some field offices continue to include the names of individuals mentioned in monitoring conversations in their field office ELSER indices. Now, those, I assume, the ACS UNI would find those, but what about the field offices that don't, that don't put them in their ELSER index? The ACS UNI search would not find those, would it? That, well, presuming that they were not put in, but the presumption is that they actually are put in, in terms of the indices. But, but Hardy says, Hardy says some field offices, some continue to include the names of individuals mentioned in field offices. That suggests to me that others just keep the information in their books, their case files. That's assuming- I'm sorry, go ahead. No, go ahead. I didn't, I didn't, you know- Again, that was based on, that was based on the misunderstanding of how the process worked, which was clarified in the 16th Hardy Declaration. In essence, it was- Okay. So, just step back and say to us, explain to us, using the record, how the searches that the FBI did would uncover mentions in field offices that are both mentioned, some are in the ELSER index, some are just in books. Now, how would, what in the record tells us that the FBI searched for those ELSER mentions, those two categories? The, again, the paragraph 115 of the Hardy Declaration, that is, when you read the declaration, it speaks to the misunderstanding of there being a need for a separate search. However, the indices themselves, the indices themselves were uploaded into ACS. And also, I'd like to mention that the standard under FOIA is adequacy, that is, to conduct an adequate and reasonable search. So, you don't have to recover all records extent, it's that the search has to be reasonable, and there wasn't any challenge below to the adequacy of the search. So, that argument was waived. The challenge wasn't to the specific, the names used, or even whether everything was searched. The rule 56D motion was, in essence, says that I have insufficient information to challenge the search. And I want to get to that. Did you just, is it your position that his challenge to the ELSER search is waived? Is that what you just said? Yes, that's one of the positions that's correct. But he, in his cross motion for summary judgment, he said that the ELSER search was inadequate for all the reasons said in his other motion. And the court should grant summary judgment based on that. So, he raised it. Well, he didn't raise the precise issues pertaining to the location search in terms of ACS. So, the precise issue was not raised before the court. That is the issue I'm mentioning to you now that the district court found. That is that the search was adequate because the proper places were searched. Okay. Unless my colleagues, well, did you have anything So, I have a question. And that's regarding search terms. Yes. I mean, we've held repeatedly, going back to at least Oglesby in 1990, that in order for the district court to assess whether a search was adequate, the court needs to know what search terms or keywords were used. Do you dispute that that's our case law in this circuit? I do not dispute that fact in terms of that search terms that this court has found that search terms are necessary to be able to evaluate the adequacy of the search. So, where in the record were the search terms ever disclosed to the court and to Mr. Shapiro? The second declaration speaks to the search of the ELSR. An ELSR search being conducted of the subjects, that is the subjects of the request. That columns subject. In addition, the 16th Hardy Declaration discusses the duplicity of searches. That is that when the search was conducted, the FBI had already conducted a search of the ACS. And so, the FBI's search of the ACS, which is discussed in the district court's opinion, discussing, as Judge Tatel said, the phonetic breakdowns, the social security numbers were mentioned, as well as the subjects constituted a search of the ELSR, what was a search in the search terms used for the ELSR indices. Those are the locations in the record where it mentions the information that was searched in search terms. I guess what I'm trying to get at, though, is was there ever a list that was provided in the record of, okay, these are the search terms that were used, and here's the list. There's 20, there's 30, there's 40, there's 100, there's five. If you look at the, again, not explicitly, it said we searched the subjects. And so, the Exhibit A contains a list, and that list is the list of subjects for each of the 81 or the 81 different request numbers associated with the request. Okay. So, not to mention, as well as the FBI did, the record does spell out what search was done of the ACS. In terms of in detail, in terms of the search terms, and that, in effect, was a search of the ELSR indices, as well. What page is that on, Mr. Tillman, in the record? What specifically? The page of the opinion or page of the declaration? What specifically are you? Yeah, in the declaration. So, the declaration, paragraph 115 of the 16th declaration, the second CARI declaration, it's an attachment A, the specific paragraph number, so, specific paragraph number is 21 in the second declaration. And then, the, as well as the paragraph 19 of the second declaration. One read together. Okay. Judge Wilkins, were you finished with that line of questioning? Well, I guess what I'm, why I'm confused about this is that, that in, in the opening brief of Mr. Shapiro, Appellant Shapiro, Dr. Shapiro, I should say, he points out that the searches weren't adequate, or there's no way to know whether the searches were adequate, because we never got the keywords or the search terms. And, and I didn't see in your brief, where you, where you responded to that and said, yes, we did get the search terms. And, did I know that, excuse me? Did I miss that? Is it in your brief? Um, I, I don't have a specific place in the brief where that is mentioned. I will confess that I didn't draft the brief, and I wasn't counseled below. But, with that being said, it is in the record, in terms of the court understood the search terms to be what would have, has been mentioned. The court's opinion discusses the search terms that were used, and the search is being adequate. Okay. Those are all the questions I have. Judge Rowell, did you have anything else? I did not. Thank you. Okay, great. Okay, thank you. Let's see. Mr. White, you, you had some time left, so go ahead. Thank you, Your Honor. I think part of the reason that the court is having some difficulty extracting from the record exactly what these systems are about, how they work, what happened, is precisely the reason that we needed discovery and why the record was inadequate. The district court assumed that when the FBI was talking about the ELSR indices, that it meant the ERS and EDA. The FBI never so much as mentions ERS or EDA or field offices, or EDMS, anywhere in their brief. They suggest at first that... Those are all files, right? That you're mentioning. Those are... You put them in the context of my library metaphor. Those are all books, right? They're files of documents, correct? Well, they're audio recordings, but... They're not card catalogs, right? They, yes, they are catalogs. And, you know, if Your Honor would like to see, you know, for example, we included in the record a search request for ERS and the results of it, and what a search slip looks like for EDA and what it returned. And those are at Joint Appendix 526 and 528. The FBI suggested at first that they did a separate search of the ELSR indices, whatever that means. They didn't say what keywords they were using. They didn't say which of the ELSR indices they were searching. And then they go on to say, well, actually, we never searched the ELSR indices separately. What we did, what the ELSR folks did is an The EDA has the capacity to search only principles... Wait, wait, why wouldn't the ACS UNI that searches the ELSR indices, right? That's where you do it, correct? Some of their... Why would you, why would you, if you do, if you do, let's assume you're looking for one name, and everybody agrees it's the right name. Okay. And you put it into UCSACI, UNI, ACS UNI, and it doesn't turn up anything in the ELSR index. Doesn't that tell us that that name's not there? No. All it tells us is that it is not indexed in the CRS. So what Mr. Hardy says is, and this is at Joint Appendix 155, not all names of individuals contained in the ELSR index can be retrieved through the general indices of the CRS. That is, not all names in the ELSR indices can be retrieved through an ACS UNI search. The government is saying, yes... And where, where are those? Yeah, I understand your point about that. I get that. Where are those documents if they're not in there? Are they in, in the office, the field offices? They're just not indexed at all? They are, they can be indexed. I mean, it's difficult because the record is so incomplete as to what's going on here. And, you know, that's sort of why we wanted to get a fuller explanation from the FBI. However, the best of my understanding is that the ACS UNI can be from that. There is ELSR, and that is where the actual audio files reside. And it also has its own separate index. So for example, if the CRS says we, we did a wire tap of somebody. Okay. The actual recording of that is not in the CRS unless it's serialized. Sometimes it is, sometimes it's not. And, you know, this is another issue that the FBI doesn't address. When they're serialized, the record shows that they're going into something called a 1D file. If they're not, then, you know, everything exists in the ERS EDA, except maybe some of it is in the EDMS because that is what is currently the most comprehensive system. We don't know what keywords were used. And we don't know if, if an ACS, you know, assuming the government's position that ACS search did search all of the ELSR indices, we still don't know, did the FBI follow its previous policy of limiting searches to principles? Or is that even something that ACS has a capability of doing, distinguishing between principles and mentions? We just have no idea what was going on here. And we asked, I think, some very specific questions in the interrogatories to get at these answers, a little bit about how are things indexed. But I think the court did make very clear in Campbell, which post dated when the ACS came online that an ELSR, a separate ELSR search is required. I don't know exactly what the record was in that case. Maybe the government's offering more, maybe it's offering less now, but the record is just so barren that the district court was left to speculate as to what was going on. Some of those speculations may be accurate. Some of them were not, but on summary judgment, all of this has to be drawn in the light most favorable to plaintiff. And that's clearly not something that happened here. So what's your response to your friend on the other side's argument that the district court knew what keywords were used because there was the 16th party declaration, et cetera? Right. The district court knew what keywords were used to search the ACS. The court did not know what keywords were used to search the ELSR indices separately. It may have been that there were no search terms provided for the ELSR indices because the FBI never did a separate search for the ELSR indices. They said at first they did. They said later they didn't. If they never did a separate search of ERS EDA, our argument is they should have. If their argument is that they did do a separate search of those, then our argument is then tell us the keywords that were used. Tell us what limitations. And I think it is in stark contrast to the incredible detail the FBI provided about how the CRS system works, how it's searched, what keyword terms were used, and their complete silence on the ERS and EDA systems. The court held in Ancient Coin Collectors Guild essentially that the plaintiff needs to point to a system in the record and then the burden is on the agency to fill in the gap in the record. And that's what plaintiff did here. Plaintiff did his best job to present information he had from the public record, from previous FOIA requests. But as this court noted in Londrigan, discovery is especially important in FOIA cases because of the asymmetry of information between the parties. And I think it's very telling that the FBI never so much as mentioned these record systems, never mentioned the field offices. And if they did search only the ACS, they never said whether it was limited to a principal search as their own guidance says should happen. Maybe that guidance was still in effect. Maybe it wasn't. We don't know. The guidance... Are you disputing what your friend on the other side says, which is that the ACS will search and that all L-cert indices are uploaded in the ACS? Yes, they're not uploaded. The actual audio files are sometimes serialized and put into a 1D file. And often they're not. They are in the EDMS or ERS. There is apparently, the FBI says, a quote, interface between these systems. We don't know what that means, right? It may mean that ACS interfaces with it in the sense that it can only access principal records. But the problem here is that we know so little about how these interface and what can be accepted. What we do know for certain is that a search that is limited... I think I'm not understanding you, or maybe we are like two ships passing in the night. Are you disputing whether L-cert indices are uploaded into ACS indices? Yes. And what is you basing that dispute on? How is that a dispute of fact? So this is from Joint Appendix 155, the second Hardy declaration saying, not all names of individuals contained in the L-cert indices can be retrieved through the general indices of the CRS. The... Hardy goes on to later say that RIDS uses the CRS search to locate L-cert records. So those are, when they say ACS search, that is equivalent to saying we search the CRS. And there are L-cert records. To be clear, there are some L-cert records in the CRS. There might be a record that says, we did a wire tap. Here's our Title III application. The FBI would then presumably follow that lead and go to the L-cert system to retrieve it. But it is very much in dispute whether they were uploaded. And if they were uploaded, how the search would take place. What would that mean that they interface? And I think it's important also, again, when the FBI says the L-cert indices were uploaded, we don't know what that means. We don't know specifically. L-cert indices is a term that exists in the Federal Register. It's not an actual thing. It's a system of record under the Privacy Act. The actual computer systems are ERS and EDA. So this is a little bit more like a legal conclusion that they're pushing. They made the definitions of L-cert indices. They refused to tell the court what their definition is. And that's sort of the basic information that plaintiff needs in order to be able to meaningfully challenge the issues here. Anything else Judge Wilkins? Well, I guess what I'm trying to, another part of this that is concerning to me that I'm trying to tease out is that your Rule 56-D motion says, you know, we want discovery because we don't know, in part, and it said the basis was we don't know what search terms would be used. With respect to your opposition to summary judgment by the government, you said in passing in the sentence, if we want you to deny summary judgment to the government or grant us summary judgment, I'm not sure which, because of the fact that we don't know what search terms were used, as mentioned in our Rule 56-D motion. But as best as I can tell, that was never developed further. Am I wrong about that? In the summary judgment briefing, it wasn't developed further. Yeah, the summary judgment briefing just incorporated by reference. We said you can't do that. The court has, I couldn't find any authority that suggests that two concurrent filings cannot incorporate references by each other. What cannot happen is, you know, a plaintiff can't do something that would sort of go over the page limit or in a separate proceeding, like on appeal, say we incorporate that. But in fact, the government did the same thing in their brief, attempting to incorporate by reference. Their cross motion for summary judgment said nothing other than we incorporate by reference our opposition to the cross motion for summary judgment. Well, they incorporated by reference their summary judgment motion. Right. So you don't have to, once you're briefing summary judgment, when you say I'm entitled to summary judgment, and then you can say in opposition to the other side's cross motion for summary judgment, you can say I don't need to say anything more than what I said in my motion saying that I should get summary judgment. That's different than incorporating by reference a completely different motion, which is, I want discovery. Well, Your Honor, it's not uncommon that plaintiffs argue in the alternative, we need discovery because we don't have the information. But then in order to avoid waiving the issue on the merits, they then say, you know, the same reasons, we could have copied and pasted most of that brief. I don't think that would have really accomplished anything. The reasons we set forth would have accomplished placing it before the district court because the district court didn't seem to be focused on your search term argument as a grounds to deny summary judgment. The district court seemed to be focused on your search term argument as whether or not that entitled you to discovery. And the reason that the district court was focused on it that way was because that's the way you litigate. Well, I mean, the court ultimately didn't really address the merits of it. So focusing instead entirely on the bad faith, but the way we litigated it in this particular circumstance is to say in our discovery motion, the government's affidavits are insufficiently detailed. That is also the same standard for us to prevail or to successfully oppose their summary judgment motion. If it is true that it was insufficiently detailed, that same argument applies in both cases. So I'm not sure what else we would have said in our brief. All right. Thank you. Those are all my questions. Thank you, gentlemen, the case is submitted.
judges: Tatel, Wilkins, Rao